**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MARCELLE ZAMORA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | No. C 09-04852 JSW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Now before the Court is the motion for summary judgment filed by Plaintiff Donna M. Zamora ("Zamora") and the cross-motion for summary judgment filed by the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and having considered the parties' papers and the relevant authority, and good cause appearing, the Court hereby DENIES Zamora's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Zamora brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision denying her application for Social Security benefits. At the time of the Commissioner's decision, Zamora was 46 years old. (Administrative Record ("AR") at 33.) Her educational background is "about a GED," and she has also completed a computer

1  education class. (AR at 33-34.) She suffers from "chronic back pain," and has complained of
2  "paraesthesias into her right leg, and shooting pains in her left lumbar back." (AR at 224-25.)
3  She also suffers from depression, which is "directly related to her physical condition." (AR at
4  240.)

5  Zamora's back pain began on December 12, 2001 when she suffered an injury to her
6  lumbar spine while working at Costco Wholesale. (AR at 139, 161.) She worked as a cashier at
7  Costco from August 31, 1998 until the time of her injury. (AR at 271-72.) She stopped
8  working immediately after she became injured, and she has not since returned to work. (AR at
9  273.)

10  After suffering this back injury, Zamora began treatment with her primary care provider,
11  Dr. Teran. (*Id.*) Dr. Teran treated Zamora with "different medications and physical therapy."
12  (*Id.*) On July 27, 2006, Dr. Teran completed a "Lumbar Spine Residual Functional
13  Questionnaire." (AR at 247-51.) In this questionnaire, Dr. Teran noted that Zamora's pain was
14  such that it would frequently interfere with her ability to maintain the attention and
15  concentration needed to perform "even simple work tasks." (AR at 248.) She also found that
16  Zamora could "occasionally" lift objects weighing ten pounds, but could only "rarely" lift
17  objects weighing twenty pounds. (AR at 250.) Dr. Teran believed that Zamora's maladies
18  would cause her to have "good days" and "bad days," but did not think that these bad days
19  would cause her to be absent from work for three or more days per month. (*Id.*)

20  On July 31, 2006, Dr. Les Kalman performed a psychiatric evaluation on Zamora. (AR
21  at 238-41.) Dr. Kalman observed that Zamora "admitted to feelings of hopelessness,
22  helplessness, and worthlessness," as well as anxiety attacks. (AR at 239.) Dr. Kalman
23  determined that Zamora's psychiatric difficulties were "directly related to her physical
24  condition." (AR at 240.) He concluded that she had "decreased ability to maintain attention
25  and concentration" but was nevertheless "able to withstand the stress and pressures associated
26  with daily work activities to a limited extent." (*Id.*) He also concluded that Zamora was
27  "seriously limited, but not precluded" from maintaining attention for a two-hour segment,
28  completing a normal workday or workweek without interruptions caused by psychological

1  symptoms, and dealing with normal work stress. (AR at 244.) Furthermore, Dr. Kalman
2  concluded that if Zamora returned to work, she would likely be absent from work for three or
3  more days per month. (AR at 246.) Zamora was scheduled to undergo an additional psychiatric
4  evaluation claim on July 27, 2007 in conjunction with her disabilities claim. (AR at 22.)
5  However, she did not attend that appointment. (*Id.*)

6  On February 13, 2006, Zamora applied for a period of disability and for disability
7  insurance benefits; on the following day, she filed a Title XVI application seeking supplemental
8  security income. (AR at 16.) Zamora's applications were denied on December 5, 2006, and on
9  September 27, 2007, the Social Security Commissioner affirmed this denial upon
10 reconsideration. (*Id.*) On October 16, 2007, Zamora requested a hearing regarding the
11 applications that had been denied. (*Id.*)

12 Administrative Law Judge Tielens (the "ALJ") presided at the hearing, which occurred
13 on January 13, 2009. (*Id.*) On March 24, 2009, the ALJ issued his decision and held that
14 Zamora was not disabled because she retained the residual functional capacity to perform a
15 significant number of jobs in the national economy. (AR at 24-25.) Zamora submitted a
16 request for review to the Social Security Appeals Council, and on June 25, 2009 the Council
17 denied her request. (AR at 1.) Zamora appealed to this Court on October 13, 2009.

18 In support of her motion, Zamora raises three arguments. First, she argues that the ALJ
19 improperly disregarded the testimony of her treating physician, Dr. Teran, when calculating
20 Zamora's residual functional capacity ("RFC"). Second, Zamora argues that the ALJ's
21 calculation of her RFC was erroneous because it contradicted the opinion of Dr. Kalman, a
22 psychiatric specialist who examined Zamora. Third, Zamora argues that the ALJ improperly
23 discredited her testimony.

## ANALYSIS

**A.    Standard of Review.**

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this "substantial evidence" standard, the ALJ's factual findings must be based on

3

"more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "[W]here the evidence is susceptible to more than one rational interpretation," the reviewing court must uphold the ALJ's decision. *Id.* at 1039-40. When applying the substantial evidence standard, the reviewing court is "obligated to look at the record as a whole and not merely at the evidence tending to support a finding." *Walker v. Mathews*, 546 F.2d 814, 818 (9th Cir. 1976) (footnote omitted).

Although the reviewing court must defer to the ALJ's factual findings, it should not defer to the ALJ's application of legal standards. *See Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Therefore, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Id.*; *see also Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) ("Even though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of disability.").

**B.    Legal Standard for Establishing a Prima Facie Case for Disability**.

Under the Social Security Regulations, ALJs use a five-step sequential process to determine whether claimants are disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2009). At the first four steps in this sequence, the claimant bears the burden of proving that he or she is entitled to Social Security benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the fifth and final step, the burden shifts to the ALJ. *Id.*

The ALJ's five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must have a severe impairment. *Id.* § 404.1520(c). Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to this portion of the Social Security Regulations,[1] the claimant will be found disabled without regard to his or her age, education, or work experience. *Id.* § 404.1520(d)(2). Fourth, if the claimant's impairments do not meet or equal an impairment listed in Appendix 1, the Commissioner will assess and make a finding

---

[1] Appendix 1 provides a list of impairments that are presumed to be severe enough to preclude work, and thus render the claimant disabled. *See* 20 C.F.R. § 401.1520(d).

4

about the claimant's RFC. *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do in a work setting despite his or her limitations. *Id.* § 404.1545(a)(1). If, based on the claimant's RFC, the claimant can still perform his or her past work, he or she will not be found disabled. *Id.* § 404.1520(f). If he or she cannot, the ALJ proceeds to step five, at which the ALJ must determine whether the claimant is capable of performing any work found in the national economy. *Id.* § 404.1520(g). If the claimant is capable of any such work, then he or she is not disabled. *Id.* § 404.1520(g).

Here, the ALJ determined that Zamora was not disabled because: (1) her impairments did not meet or equal the listing of impairments required by the Listing of Impairments in Appendix 1; and (2) based on the ALJ's calculation of Zamora's RFC, her impairments did not prevent her from performing certain jobs that existed in the national economy. (AR at 19, 24.)

**C.    The ALJ's Calculation of Zamora's RFC Was Consistent With Dr. Teran's Opinion.**

Zamora argues that the ALJ improperly disregarded the testimony of her treating physician, Dr. Teran, when it calculated Zamora's RFC. Zamora appears to acknowledge that the ALJ's decision did not *expressly* contradict Dr. Teran's opinion, but instead argues that the ALJ *tacitly* contradicted her opinion by making RFC findings that were irreconcilable with Dr. Teran's medical conclusions. Specifically, Zamora argues that the ALJ rejected Dr. Teran's opinion by finding that Zamora could perform "light work" even though Dr. Teran concluded that Zamora did not have the physical capabilities that are required to perform "light work."

The Ninth Circuit has explained that, generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Where an ALJ disregards a treating physician's uncontradicted opinion, the ALJ must "'set forth clear and convincing reasons for doing so.'" *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). If another physician has contradicted the treating physician's testimony, the ALJ may disregard

5

1 the treating physician's testimony if he or she "make[s] specific findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Regardless of the weight the ALJ gives to the treating physician's opinion, the Social Security Regulations ensure that ALJs will provide claimants with "good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ found that, with certain limitations, Zamora's RFC enabled her to perform "light work." (AR at 19.) The Social Security Regulations define light work as follows:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Performing "the full range of light work requires standing or walking for up to two-thirds of the workday." *Gallant v. Heckler*, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984).

The Court must first determine whether the ALJ actually rejected Dr. Teran's opinion by way of a decision that was incompatible with her opinion. Dr. Teran opined that Zamora could "frequently" lift and carry objects weighing less than ten pounds, and could "occasionally" lift objects weighing ten pounds. (AR at 250.) The regulatory definition of "light work" contemplates workers "frequently" lifting objects *up to* ten pounds; thus the Social Security Regulations' definition of "light work" mirrors Dr. Teran's prescribed limitations regarding lifting and carrying, even though it phrases them differently. 20 C.F.R. § 404.1567(b). Furthermore, Dr. Teran believed that Plaintiff could lift *up to* twenty pounds on rare occasions. (AR at 250.) This is consistent with the Social Security Regulations' proclamation that light work will *never* require the worker to lift more than twenty pounds. § 404.1567(b).

Dr. Teran was also of the opinion that Zamora was capable of standing or walking for only about four hours per day. (AR at 249.) Zamora argues that the ALJ's decision that

6

Zamora could perform light work conflicted with Dr. Teran's opinion that Zamora could not walk more than two city blocks without needing rest or experiencing severe pain. The full range of light work requires standing or walking for up to two-thirds of the workday. *Gallant*, 753 F.2d at 1454 n.1. Thus, there is an apparent contradiction between the definition of "light work" and Dr. Teran's opinion. However, the ALJ remedied this apparent conflict by giving Zamora "a sit/stand option at will." (AR at 19.) Therefore, the ALJ's RFC calculation was consistent with Dr. Teran's opinions that Zamora was incapable of standing or walking for more than four hours per workday or of walking for more than two blocks without requiring rest.

Zamora further contends that the ALJ erred by finding her capable of light work because Dr. Teran found that Zamora would need unscheduled breaks, and that this need "would affect performance of, and possibly preclude, all types of work." (Reply Br. at 3.) However, Dr. Teran was of the opinion that Zamora would need, at most, two unscheduled breaks per day, and that these breaks would last an average of five minutes. (AR at 249.) Nothing in the Social Security Regulations' definition of "light work" requires workers to abstain from unscheduled breaks. *See* 20 C.F.R. § 404.1567(b). Therefore, the ALJ's finding on Zamora's RFC is consistent with Dr. Teran's opinion that Zamora would need unscheduled breaks.

The ALJ's opinion regarding Zamora's RFC is consistent with Zamora's workplace limitations identified by Dr. Teran. Therefore, contrary to Zamora's assertion, the ALJ's opinion was not "a tacit rejection of these opinions on limits." (Plaintiff's Mot. at 5.) Because the ALJ did not disregard Dr. Teran's opinion, it did not commit error.

**D.   The ALJ's Calculation of Zamora's RFC Was Consistent With Dr. Kalman's Opinion.**

Zamora argues that the ALJ's calculation of her RFC was erroneous because it contradicted the opinion of Dr. Kalman, a psychiatric specialist who examined Zamora. The Commissioner counters that the ALJ's RFC calculation was a reasonable interpretation of Dr. Kaplan's report and was consistent with the report.

7

The Social Security Commission will "always consider the medical opinions in [the claimant's] case record" when determining whether the claimant is disabled. 20 C.F.R. § 404.1527(b). When considering medical opinions, the Commission generally "give[s] more weight to the opinion of a source who has examined" the claimant than to a non-examining source's opinion. *Id.* § 404.1527(d)(1). Likewise, the Ninth Circuit has explained that "[t]he opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. This "greater weight" means that an ALJ may not reject an examining physician's uncontradicted opinion unless the ALJ "give[s] clear and convincing reasons" for doing so. *Gallant*, 753 F.2d at 1454. Even if the examining physician's opinion is contradicted, the ALJ can only reject the opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The Court must first determine whether the ALJ actually rejected Dr. Kalman's opinion by way of a decision that was incompatible with his opinion. Dr. Kalman opined that Zamora's mental condition rendered her unable to meet competitive standards for "[p]erform[ing] at a consistent pace without an unreasonable number and length of rest periods." (AR at 244.) Dr. Kalman also found that Zamora had a "decreased ability to maintain attention and concentration" but nevertheless was "able to do simple one and two-step job instructions" and was "able to deal with the public." (AR at 240.) Zamora argues that the ALJ implicitly rejected Dr. Kalman's opinion regarding Zamora's pacing ability by finding her mental state "d[id] not reduce her capacity for all work related activities" and that she could perform "simple, repetitive tasks with limited public interaction." (AR at 19, 23.)

The ALJ's opinion regarding the type of work that Zamora is able to perform does not contradict Dr. Kalman's opinion on Zamora's workplace capabilities. A review of Dr. Kalman's opinion reveals that he believed Zamora could not perform at a competitive pace, but that she was nevertheless capable of following simple job instructions and satisfactorily maintaining her attention for two hours at a time and sustaining an ordinary routine. (AR at 244.) Thus Dr. Kalman's opinion was ambiguous in that it clearly found that she was capable

8

of *some* work, but did not explain to what extent her inability to perform at a competitive pace limited her capabilities.

"The ALJ is responsible for . . . resolving conflicts in medical testimony" and for "resolving ambiguities" in the evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Therefore, in light of the ambiguity in Dr. Kalman's opinion, the ALJ conformed to its proper role by attempting to harmonize the limitations that Dr. Kalman identified with the capabilities that Dr. Kalman also identified. When there is more than one rational interpretation of the evidence in question, the ALJ's decision must be upheld. *Id.* Here, it was rational for the ALJ to interpret the limitations identified by Dr. Kalman as restricting Zamora to performing "simple, repetitive tasks," since simple tasks were less likely to require Zamora to maintain attention and concentration. (AR at 19.) Therefore, the ALJ's decision regarding Zamora's RFC does not contradict Dr. Kalman's opinion. Because the ALJ did not disregard Dr. Kalman's opinion, it did not commit error.

### E.     The ALJ Articulated a Sufficient Reason for Discrediting Zamora's Testimony Regarding her Symptoms.

Zamora argues that the ALJ improperly discredited her testimony. The Commissioner, on the other hand, asserts that the ALJ provided a legally adequate basis for finding that Zamora was not fully credible. When evaluating a claimant's credibility, "the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Although an ALJ may choose to disbelieve a claimant's testimony, "'rejection of the testimony must be accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief.'" *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (quoting *Stuart v. Califano*, 443 F. Supp. 842, 848 (W.D. Mo. 1978)).

The Ninth Circuit has held that "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to

9

1  subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81
2  F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)).

3  Moreover, the evidence on which the ALJ relies "must be clear and convincing if
4  medical evidence establishes an objective basis for some degree of the symptom and no
5  evidence affirmatively suggests that the claimant was malingering." *Swenson v. Sullivan*, 876
6  F.2d 683, 687 (9th Cir. 1989); *see also Bunnell*, 947 F.2d at 345-46 (ALJ's findings must be
7  sufficiently specific to allow reviewing court to conclude that ALJ did not arbitrarily reject the
8  claimant's testimony regarding his or her pain). Under this "clear and convincing" standard, the
9  ALJ "must state which pain testimony is not credible and what evidence suggests the
10 complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). General
11 findings are insufficient, and the ALJ must make "specific findings" justifying rejection of the
12 claimant's testimony. *Id.*

13 Here, the ALJ found that Zamora's "medically determinable impairments could
14 reasonably be expected to cause the alleged symptoms . . . ." (AR at 22.) Furthermore, there
15 was no evidence that she was a malingerer. (AR at 22, 246-47.) However, the ALJ disagreed
16 with Zamora's subjective account of her symptoms, and held that Zamora's "statements
17 concerning the intensity, persistence and limiting effects of these symptoms, precluding all
18 basic work-related activities, are not credible to the extent they are inconsistent with the . . .
19 residual functional capacity assessment." (AR at 22.) To support his decision to discredit
20 Zamora's testimony on the extent of her symptoms, the ALJ observed that "[t]he claimant
21 refused to attend the consultative evaluation scheduled for July 27, 2007 . . . ." (*Id.*) "[A]n
22 unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment"
23 can "cast doubt" on a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
24 Moreover, the Ninth Circuit has found a claimant's "fail[ure] to give maximum or consistent
25 effort during two physical capacity evaluations" to be "compelling" evidence in support of an
26 ALJ's decision to discredit a claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th
27 Cir. 2002); *cf. Arellano v. Astrue*, No. EDCV 08-1537 JC, 2010 WL 3199337, at *4 (C.D. Cal.
28 Aug. 11, 2010) (ALJ adequately supported decision to discredit claimant's symptom testimony

10

1  where "[t]he record [was] replete with indications that plaintiff . . . ha[d] consistently missed
2  appointments"). Taken together, these holdings demonstrate that a claimant's unexcused failure
3  to attend a consultative evaluation would justify an ALJ's decision to discredit that claimant's
4  testimony.

5     The ALJ noted that Zamora offered several reasons for her failure to attend her
6  consultative evaluation. (AR at 22.) "[S]he gives about four different excuses, one of which is
7  [her claims representative] telling her she didn't have to go. . . . The other one is she didn't have
8  time, it was inconvenient. . . . It was all a matter of convenience." (AR at 49.) The ALJ found
9  these excuses to be inadequate. The ALJ also explained that "there are processes to deal with
10 these kinds of issues, other than just . . . blowing them off . . . ." (*Id.*) The ALJ then stated that,
11 generally, claimants ignore these processes because they "want [their] own person doing the
12 exam and don't want an objective view," and referred to that scenario as "the take I have on
13 situation like this." (AR at 50.) The ALJ echoed these sentiments in its decision, in which it
14 stated that "the representative did not follow the appropriate process." (AR at 22.) The ALJ
15 held that Zamora's testimony regarding her symptoms was not credible and immediately
16 explained "[Zamora] refused to attend the consultative evaluation scheduled for July 27, 2007 . .
17 . ." (*Id.*) It is thus clear that the ALJ based its credibility holding on Zamora's unjustified
18 failure to attend the scheduled evaluation. Through this explanation, the ALJ ensured that this
19 Court would not be "forced to speculate as to the grounds for an adjudicator's rejection of a
20 claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346 (citing *Murray*, 722 F.2d at
21 502).

22    In addition to finding inadequate Zamora's justification for her failure to attend the
23 consultative evaluation, the ALJ explained that her independently-scheduled evaluation with
24 Dr. Kalman was not an adequate substitute. (*See* AR at 23.) Specifically, the ALJ found Dr.
25 Kalman's evaluation was lacking because: (1) it was entirely "based on claimant's subjective
26 complaints"; (2) it was based on medical information that was not current; and (3) it
27 inaccurately listed the dates of Zamora's medical treatment. (*Id.*) Accordingly, the ALJ based
28 its decision to discredit Zamora's testimony on her failure to follow prescribed treatment -- a

11

valid basis per *Fair*, 885 F.2d at 603 -- and explained this decision with "a specific finding to that effect, supported by a specific, cogent reason for the disbelief." *Lewin*, 654 F.2d at 635.

Accordingly, the ALJ did not commit legal error through its finding that Zamora was not credible because the ALJ rejected the credibility of Zamora's symptom testimony based on a permissible consideration, and provided a sufficient explanation for that decision.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Zamora's motion for summary judgment, and hereby GRANTS the Commissioner's cross-motion for summary judgment. A separate judgment shall issue, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: September 22, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE